# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES BIBBS,** | : | **CIVIL NO. 1:15-CV-86** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT GILMORE,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

## MEMORANDUM

Petitioner Charles Bibbs ("Bibbs") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

## I. Factual Background

The factual background of this case has been aptly summarized by the state court as follows:

> At approximately 1:30 a.m. on May 30, 2006, Robert Berry, a cab driver for Penn Central Taxi, was dispatched to 2166 Logan Street in the City of Harrisburg. When he arrived in that area, he observed a young man sitting on the porch of 2165 Logan Street. The young man approached Berry's cab, got in, and informed Berry that his cousin was co[m]ing.
>
> Moments later, [Bibbs] appeared from a nearby alley and entered the rear passenger-side seat of Berry's cab. [Bibbs] then aimed a pistol at Berry's head as a third man, who was wearing a mask, appeared from the alley and approached the driver's side of the cab. All three men proceeded to point guns at Berry as [Bibbs] got in the front seat and went through Berry's pockets and glove compartment, taking $100, some keys and a cell phone. The masked man then ordered Berry out

of the cab and told him to count to ten. [Bibbs] and the two other men then drove off in Berry's cab.

Berry immediately reported the robbery to police from a nearby pay phone and was subsequently interviewed at police headquarters on— June 1, 2006. At that time, Berry was shown some 2600 photographs but was unable to identify the men who robbed him. Later, a friend informed Berry that he should look at some photographs in the newspaper. Berry recognized [Bibbs] as one of the men pictured. On June 22, 2006, Berry met with Detective Christopher Krokos of the Harrisburg Police Department, who showed him a photographic array containing [Bibbs'] picture. Berry immediately identified [Bibbs] as one of the men who robbed him.

Commonwealth v. Bibbs, 2014 WL 10936785, at *2 (Pa. Super. 2014) (citing Dauphin County Court of Common Pleas 1925(a) Memorandum Opinion, dated Oct. 12, 2007).

## II.    State Court Proceedings

Following a jury trial on January 8 and 9, 2007, Bibbs was convicted in the Court of Common Pleas of Dauphin County of robbery, robbery of a motor vehicle, and two counts of conspiracy. (Doc. 19-1, at 5). On February 26, 2007, he was sentenced to a total of eight to sixteen years of incarceration. (Id.) On March 5, 2007, Bibbs filed a motion for modification of sentence. (Id.) On March 9, 2007, the Common Pleas Court denied the motion. (Id. at 5-6).

Bibbs pursued direct appeal proceedings. (Id. at 6; see also electronic docket sheet for Commonwealth v. Bibbs, Superior Court of Pennsylvania, 617 MDA 2007, found at http://ujsportal.pacourts.us). On November 2, 2007, the Pennsylvania Superior Court affirmed Bibbs' judgment of sentence. (Doc. 19-7, Commonwealth v. Bibbs, 617 MDA 2007, Pennsylvania Superior Court opinion dated Nov. 2, 2007). Bibbs filed a petition for allowance of appeal to the Pennsylvania Supreme Court. Commonwealth v. Bibbs, 997 MAL 2007. On April 16, 2008, the Pennsylvania

Supreme Court denied his petition for allowance of appeal. Id. Bibbs did not file a petition for writ of certiorari to the United States Supreme Court, therefore his judgment of sentence became final ninety days later on July 15, 2008. See 42 PA. CONS. STAT. § 9545.

On February 26, 2009, Bibbs filed a timely petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 19-8). On October 27, 2009, Bibbs filed a counseled, amended PCRA petition. On January 20, 2010 and April 5, 2010, evidentiary hearings were held regarding the PCRA petition. (Docs. 19-9, 19-10). On April 26, 2010, Bibbs' PCRA counsel filed a motion to withdraw. (Doc. 19-11). On May 3, 2010, the Commonwealth filed an answer to Bibbs' PCRA. On May 28, 2010 and October 5, 2010, Bibbs filed supplemental *pro se* documents. On December 9, 2010, the PCRA court issued notice of its intent to dismiss the PCRA petition. (Doc. 19-12). The December 9, 2010 order also granted PCRA counsel's motion to withdraw. (Id.) On December 30, 2010, Bibbs filed an objection to the court's intent to dismiss. On June 17, 2011, the Court of Common Pleas ultimately dismissed Bibbs' PCRA petition.

On June 29, 2011, Bibbs filed a notice of appeal to the Pennsylvania Superior Court. (Docs. 19-13, 19-14, 19-15). On August 17, 2012, the Superior Court vacated the Court of Common Pleas' dismissal of Bibbs' PCRA petition, and remanded the matter to the PCRA court. (Doc. 19-16). On September 17, 2012, Bibbs filed an amended PCRA petition. (Doc. 19-17). The PCRA court appointed new counsel to represent Bibbs for his remanded PCRA petition. (See Doc. 19-18, at 4 ¶ 16). On

3

December 12, 2012, Bibbs' second PCRA counsel filed a motion to withdraw. (Doc. 19-18). On June 24, 2013, the Common Pleas Court filed an opinion and order providing notice of the court's intent to dismiss the amended PCRA petition. (Doc. 19-19). The June 24, 2013 order also granted the motion to withdraw filed by Bibbs' second PCRA counsel. (Id.) On July 5, 2013, Bibbs filed an objection to the notice of the court's intent to dismiss his amended PCRA petition. On August 21, 2013, the Court of Common Pleas dismissed the amended PCRA petition. (See Docs. 19-20, 19-21).

On September 9, 2013, Bibbs filed a notice of appeal to the Pennsylvania Superior Court regarding the dismissal of his amended PCRA petition. (Docs. 19-20, 19-21). On May 28, 2014, the Pennsylvania Superior Court affirmed the dismissal of the amended PCRA petition. (Doc. 19-22). Bibbs then filed a petition for allowance of appeal to the Pennsylvania Supreme Court. On November 19, 2014, the Pennsylvania Supreme Court denied the petition for allowance of appeal. Commonwealth v. Bibbs, 628 Pa. 626, 104 A.3d 1 (Table) (Pa. 2014).

III. **Standards of Review**

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."

4

Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 68.

**A.     Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); see also Nara v. Frank, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same

5

factual and legal basis for the claim to the state courts).  While the petitioner need not cite "book and verse" of the federal Constitution, <u>Picard v. Connor</u>, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting <u>Picard</u>, 404 U.S. at 275, 92 S.Ct. 509).

In this case, respondents concede that Bibbs properly exhausted each claim raised in the federal habeas petition.  (Doc. 19-1, at 12-13).

## B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."

Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the

findings of fact material to the conviction." <u>Breighner v. Chesney</u>, 301 F. Supp. 2d

354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[1]).  Mere disagreement

with an inferential leap or credibility judgment of the state court is insufficient to

permit relief.  <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S.

362, 408-09 (2000); <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the

finding lacks evidentiary support in the state court record or is plainly controverted

by evidence therein should the federal habeas court overturn a state court's factual

determination.  <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

### C.     Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance

of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984).  This right to effective assistance of counsel also extends to the first

appeal.  <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004).  In <u>Strickland</u>, the

Supreme Court articulated a two-prong test in assessing whether a petitioner has

been denied the effective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 687-88.  A

petitioner must demonstrate: (1) that his counsel's representation "fell below an

objective standard of reasonableness" and (2) that such defective performance

caused the petitioner prejudice.  <u>See</u> <u>id.</u>

In evaluating the first prong of the <u>Strickland</u> test, the court must be "highly

deferential" toward counsel's conduct.  <u>Id.</u> at 689.  There is a strong presumption

---

[1] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."  28 U.S.C. § 2254(f).

that counsel's conduct fell within the wide range of reasonable professional assistance. Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or

prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. <u>Strickland</u>, 466 U.S. at 697.

All of Bibbs' ineffective assistance of counsel claims were addressed by the state courts on the merits and, therefore, are subject to AEDPA review.

## IV. <u>Discussion</u>

In the instant petition, Bibbs alleges ineffective assistance of trial counsel on the following grounds: (1) trial counsel failed to file a pretrial motion to suppress suggestive identification; (2) trial counsel failed to object to in-court identification; (3) trial counsel was ineffective for eliciting testimony during cross-examination which allegedly implicated Bibbs in an unrelated robbery; (4) trial counsel failed to pursue a claim of prosecutorial misconduct when the prosecutor withheld a copy of the victim's statement to police; (5) trial counsel failed to request transcription of opening and closing arguments, objections, rulings, and jury instructions; and, (6) trial counsel failed to object to the admissibility of a photo array. (Doc. 1).

### A. Suggestive Identification

Bibbs argues that trial counsel, Lawrence J. Bartel, Esquire, was ineffective for not moving to suppress Berry's pretrial identification of him and failing to object to Berry's in-court identification of him.

The federal standard for evaluating the reliability of identification evidence was articulated by the United States Supreme Court in <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In <u>Neil</u>, the Court held that "convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification

procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 196-97 (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). The Court observed that the central question in this analysis is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199. The Court specified that the factors to be considered are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.

In considering the instant identification claims, the PCRA court articulated a standard which is clearly in line with prevailing federal law, as it recited the Commonwealth v. Carter, 643 A.2d 61, 71 (Pa. 1994) factors as the guideposts it would use in assessing the propriety of the witness identifications. (Doc. 19-12, at 4-5). The PCRA court's findings concerning these issues were adopted by the Superior Court, and are as follows:[2]

> Defendant's [suggestive identification] claims of ineffective assistance
> of counsel . . . all rely on the core argument that the identification of
> Defendant by the victim, Mr. Berry, was tainted because [] Mr. Berry
> viewed a newspaper photograph of Defendant prior to successful pre-

---

[2] On appeal from the PCRA court, the Pennsylvania Superior Court adopted the PCRA court's reasoning as if fully restated therein and affirmed on the basis of the PCRA court's opinion with regard to each of Bibbs' allegations in support of PCRA relief. Commonwealth v. Bibbs, 2014 WL 10936785 (Pa. Super. 2014). Consequently, the PCRA court's opinion will be the primary reference point in addressing all issues in the instant habeas petition. (Doc. 19-12).

trial identification. Defendant f[u]rther points out that successful identification prior to trial and at trial occurred despite the victim's failure to identify Defendant in a previous photograph array containing approximately 2800 photographs. Our Supreme Court has addressed this issue:

> "This Court has recognized that identifications made only after a witness has seen the defendant in the media might prove to be suggestive. Accordingly, we find [a witness's] positive identification of the appellant after seeing his picture in the newspaper an 'impermissible suggestive identification.'
>
> * * *
>
> [A]n in-court identification following a suggestive out of court identification will be admissible only if, considering the totality of the circumstances, it is determined that the in-court identification had an origin sufficiently distinguishable to be purged of the primary taint.
>
> In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness['] prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation."

Commonwealth v. Carter, 643 A.2d 61, 71 (Pa. 1994; internal citations omitted).

Here, Mr. Berry had ample opportunity to view Defendant. Mr. Berry sat next to Defendant for several minutes in the car and faced the Defendant when they both exited the vehicle. N.T. pp. 39-41 (January 8, 2007). Mr. Berry's level of attention is indicated by his statement that he was able to see Defendant throughout the encounter. N.T. p. 42 (January 8, 2007). Though there is no record of Mr. Berry's description of his assailant prior to viewing the newspaper photograph, Mr. Berry stated at trial that he was one hundred percent certain that Defendant was one of the individuals who robbed him. N.T. p. 54 (January 8, 2007). The successful pre-trial identification, on

> July 22, 2006, occurred less than two months after the May 30, 2006
> robbery.  N.T. pp. 7, 112-3 (January 8, 2007).
>
> Based on totality of the circumstances, we find that the factors
> in <u>Carter</u> have been met by the prosecution.  While this Court agrees
> that the identification by the Victim was suggestive, we find that both
> the pre-trial and in court identifications of Defendant were sufficiently
> independent in origin to be purged of the primary taint.  Because the
> underlying argument is without merit, Defendant's first, second, and
> fourth ineffectiveness claims are without merit.

(Doc. 19-12, at 4-5).

In the instant petition, Bibbs argues that trial counsel was ineffective for not trying to suppress Berry's pretrial identification of him and failing to object to Berry's in-court identification of him.  The PCRA court addressed these issues at length and found that although identification by Berry was suggestive, both the pre-trial and in-court identifications of Bibbs were sufficiently independent in origin to be purged of the primary taint.

Applying the AEDPA's deferential standard of review, the court recognizes that the PCRA court determined that the identification procedure was suggestive, but, based on the totality of the circumstances, there was sufficient evidence to establish an independent basis for the pretrial and in-court identifications.  After careful review of the record, the court finds that the Pennsylvania court's determination was not contrary to or an unreasonable application of federal law.  28 U.S.C. § 2254(d)(1).  In particular, the court's determination that the identifications possessed sufficient aspects of reliability was not contrary to or an unreasonable application of <u>Biggers</u>.  <u>See</u> <u>Biggers</u>, 409 U.S. at 199, 93 S.Ct. 375.  The state court evaluated Berry's testimony and found that he had more than sufficient opportunity

to observe Bibbs while sitting next to him in the car and exiting the car, and that his view of Bibbs was unimpeded. In addition, the court noted that the period of time between the crime and the identification was only two months. Further, the court noted that Berry clearly stated at trial that he was one-hundred percent certain that Bibbs was one of the individuals who robbed him.

Consequently, under these circumstances, and recognizing that the state court's analysis clearly reflects its consideration of the <u>Carter</u> factors, which is in line with prevailing federal law, the court concludes that the state court's adjudication of these identification claims was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Further, Bibbs has not demonstrated by clear and convincing evidence that the state court's factual findings pertaining to Berry's testimony were incorrect, as required by 28 U.S.C. § 2254(e)(1). Therefore, Bibbs is not entitled to habeas relief on this claim.

**B.    Eliciting an Unrelated Robbery and the Photograph Array**

Bibbs argues that trial counsel was ineffective for eliciting testimony during cross-examination which implicated him in an unrelated robbery, and for failing to object to the admittance of the photograph array into evidence based on lack of authenticity. The PCRA court's findings concerning these issues, as adopted by the Superior Court, are as follows:

> Defendant's third and sixth claims are related from a factual standpoint. Defendant argues that trial counsel should have objected, based on authenticity, to the introduction of the photograph array which was successfully used to identify Defendant[.] Defendant also argues that Detective Krokos, who conducted the successful photograph array, should not have been questioned about Defendant's possible involvement in other robberies.

14

> "In determining whether counsel's performance lacked a
> reasonable basis, 'a court will not find counsel to be
> ineffective if the particular course chosen by counsel had
> some reasonable basis designed to effectuate his client's
> interest.' If counsel's chosen course had some reasonable
> basis, the inquiry ends and counsel's assistance is deemed
> effective.
>
> * * *
>
> A chosen strategy will not be found to have lacked a
> reasonable basis unless it is proven 'that an alternative
> not chosen offered a potential for success substantially
> greater than the course actually pursued."

Commonwealth v. Williams, 899 A.2d 1060, 1063-4 (Pa. 2006; internal
citation § omitted). During the January 20, 2010 PCRA hearing, Mr.
Bartel testified that he introduced the photographs and asked
questions about other robberies because Det. Krokos had shown the
photograph of Defendant in the array to several other cab drivers who
had initially identified Defendant as their assailant in separate
robberies, but had later recanted. N.T. pp. 5, 6, 8, 9, 16 (January 20,
2010). Mr. Bartel reasonably intended to show that the photograph
used to identify Defendant pre-trial was easily confusable with other
people. The only alternative strategy suggested by Defendant is that of
objecting to the array and abstaining from this line of questioning.
This Court finds that there has been no proof that such a course of
action would have had a "substantially greater" potential for success.
As a result the court declines to extend relief on the basis of
Defendant's third and sixth claims.

(Doc. 19-12, at 5-6).

Bibbs asserts that trial counsel's cross-examination of Detective Krokos

implicated him in an unrelated crime, and thus bolstered the Commonwealth's

case. (Doc. 1 at 6-7). As the Supreme Court has clarified, however, actions of

counsel that "might be considered sound trial strategy" do not constitute ineffective

assistance. Strickland, 466 U.S. at 689; see also Fahy v. Horn, 516 F.3d 169, 204 (3d

Cir. 2008). At the PCRA hearing, trial counsel testified as to his strategy for introducing the photographs, and explained as follows:

Q. And, Mr. Bartel, can you recall cross-examining Detective Krokos for the trial?

A. Yes. It was pretty long, actually.

Q. I'm sorry. What's that?

A. For a pretty long time, actually.

Q. Do you recall talking to him about other – there was another crime to which Mr. Bibbs was identified as a perpetrator?

A. Yes. It was one of the taxi drivers that I believe the guy's name was Mr. Berry – works with Mr. Berry. When he seen [sic] the picture in the paper, there was a couple people I believe at the taxi company that said that Charles was the one who actually committed a robbery against them.

Q. And why were you asking the detective about that?

A. Well, what happened is a couple days later when they had everyone in to view these photo arrays, some of them did recant and said I can't say for sure, I'm not certain, I don't want to get someone in trouble because I'm not a hundred percent certain it's him, and recanted the identification of the paper.

. . .

Q. Going back to the cross-examination of Detective Krokos, and I think Mr. Shreve had covered some of this but I want to go back over it. The point of cross-examine – the point of that cross-examination was basically because your case was – the theory of your case was misidentification. The purpose was to show that this man had been misidentified previously in other situations?

A. That's correct. To show that at the same time that Mr. Berry – I believe it's Mr. Berry, I'm not sure if it's correct – viewed the picture is because his boss seen [sic] that he – there's a robbery, said take a look at this picture, and that two or possibly three of the taxi drivers working there identified him as a person that committed robberies against them. However, two later recanted

16

and I was trying to get that out with – without eliciting that he was charged with other robberies.

Q.      You didn't want to push it too far?

A.      I thought that would hurt him more, the jury hearing that he had three robberies, and they would overlook the misidentification and find him guilty based on the fact that he was charged on other robberies also.

Q.      So it's fair to say you got what you could without pushing the envelope?

A.      I wish I got more, but –

Q.      I understand.

A.      I got what I think I needed and didn't want to push the envelope any further.

Q.      What you got from Detective Krokos you were able to use in closing to try to persuade the jury?

A.      Yes.

Q.      And it helped support your theory of misidentification in this case?

A.      Yes, it was part of the theory.

(Doc. 19-10 at 8-9, 15-17, PCRA Hearing N.T. 1/20/10 at 8-9, 15-17).

Bibbs has not demonstrated that trial counsel's articulated strategy of introducing the photographs, and questioning Detective Krokos about other robberies to show that the photograph used to identify Bibbs pretrial was easily confusable with other people, could never be considered part of a sound strategy. The PCRA court determined that this claim lacked arguable merit and noted that trial counsel articulated a sound and reasonable basis for pursuing a line of questioning regarding Bibbs' possible involvement in other robberies, i.e., to show

that the photograph used to identify Bibbs pre-trial was easily confusable with other people.  The state court's determination that counsel's performance was not deficient is not an unreasonable application of <u>Strickland</u>.  Thus, Bibbs is not entitled to habeas relief on this claim.

Additionally, Bibbs argues that trial counsel should have objected to the admission of the copy of the photographic array that had been presented to Berry for pretrial identification of Bibbs.  Federal Rule of Evidence 1002 provides that: "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  F.R.E. 1002.  The Federal Rules of Evidence further provide that photographs may be authenticated by a witness with knowledge that a photograph is what it is claimed to be.  F.R.E. 901.

Pennsylvania Rule of Evidence 1002, which is nearly identical to its federal counterpart, provides that: "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise."  PA.R.E. 1002.  In Pennsylvania, in order to implicate the Best Evidence rule, the defendant must allege that the printed copy is a misrepresentation of the original or does not conform to the original in some way.  <u>Commonwealth v. Janda</u>, 14 A.3d 147 (Pa. Super. 2011)

During trial, Berry testified that he remembered signing the photograph array and that the photograph array was presented to him in the same manner it was presented to him pretrial.  Berry stated as follows:

Q. Do you recognize that?

A. Yes.

Q. What is it?

A. It's a picture of Bibbs.

Q. Having looked at that – and I've marked it as Commonwealth Exhibit No. 1 – having looked at that, do you now remember viewing some photo arrays?

A. Yes.

Q. Do you remember signing and dating that?

A. Yes.

Q. Do you remember what the date was?

A. June.

Q. If I told you it was July 22nd, would that sound about right to you?

A. I'll tell you it was June.

Q. Okay. Let's talk about that photo array itself. That second time you went down to meet with the detectives, do you remember looking at that photo array?

A. Yeah.

Q. Was it presented to you the way that it was today on a piece of paper like that?

A. Just like that.

(Doc. 19-3 at 51, N.T. 1/8/07 at 51).

The PCRA court found that there was no credible suggestion that the outcome of the proceeding would have been different had trial counsel challenged the authenticity of the photo array presented at trial. Because the state court's

application of clearly established law was reasonable, Bibbs is not entitled to relief

on this claim.

### C. Discovery and Prosecutorial Misconduct

Bibbs argues that trial counsel was ineffective for failing to litigate

prosecutorial misconduct in withholding a copy of the victim's statement to police.

The PCRA court's findings concerning this issue were adopted by the Superior

Court, and are as follows:

> Defendant's fifth allegation of error argues that trial counsel was ineffective for failing to bring a claim of prosecutorial misconduct based on the prosecution's failure to produce a copy of Mr. Berry's statement to the police. PA. R. CRIM. P. Rule 573 states in pertinent part:
>
> > "(B) Disclosure by the Commonwealth.
> >
> > (1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
> >
> > > (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;"
>
> [] the statement of Mr. Berry was introduced as Commonwealth Exhibit 1. A copy of the exhibit is attached to Mr. Shreeve's Motion to Withdraw as Exhibit B. Mr. Berr[y]'s statement consists of a brief description of events followed by an even briefer description of the clothing and firearms of Mr. Berry's assailants. The statement contains no specific times, distinguishing features, or other, specific information which could exculpate Defendant. In short, this Court

finds nothing within the statement which could be considered "favorable to the accused". Because the statement is not favorable to Defendant, no prosecutorial misconduct claim could succeed. Because no prosecutorial misconduct claim could succeed, Defendants fifth allegation of error is without merit.

(Doc. 19-12, at 6-7).

A petitioner claiming prosecutorial misconduct as a basis for federal habeas relief must demonstrate that a prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). To constitute a due process violation, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer v. Miller, 483 U.S. 756, 765,107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976))). A court must examine the prosecutor's actions in the context of the entire trial "assessing the severity of the conduct, the effect of the curative instructions, the quantum of the evidence against the defendant, and the effect of curative instructions." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Under federal law, the government is not required to divulge the identity of its witnesses in a noncapital case. United States v. DiPasquale, 740 F.2d 1282 (3d Cir. 1984), United States v. Addonizio, 451 F.2d 49 (3d Cir. 1971) cert. denied, 92 S.Ct. 949 (1972). Similarly, Pennsylvania Rule of Criminal Procedure 573 provides, in part, that the Commonwealth of Pennsylvania is not required to disclose the

identity of an eyewitness in pretrial discovery. PA. R. CRIM. P. 573(B)(2)(a)(i). See also Commonwealth v. Herron, 475 Pa. 461, 380 A.2d 1228 (1977) (the Commonwealth has a qualified privilege to refrain from disclosing the identity of certain material witnesses). Such discovery in Pennsylvania is discretionary with the court. PA. R. CRIM. P. 573(B)(2).

The PCRA court examined Berry's statement and determined that it was not "favorable to the accused", and could not possibly exculpate Bibbs. Thus, the PCRA court found that because the statement was not favorable to Bibbs, it was not considered a mandatory disclosure pursuant to Rule 573, and his prosecutorial misconduct claim was meritless. Bibbs has failed to demonstrate that he was deprived of a fundamentally fair trial based on the prosecution's alleged failure to provide Berry's handwritten statement to his trial counsel. The state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d). Therefore, Bibbs is not entitled to relief on this claim.

### D.    Transcription

Bibbs argues that trial counsel was ineffective for failing to request transcription of the opening and closing arguments, objections, rulings, and jury instructions. The PCRA court's findings concerning this issue, as adopted by the Superior Court, are as follows:

> Defendant's seventh claim argues that appellate counsel was ineffective for failing to have the entirety of the trial transcribed prior to appeal (the opening and closing statements, objections, rulings, and jury instructions were not transcribed). Here, Mr[.] Bartel stated that his reasoning for not seeking a full transcript was that the only viable

claim for appeal was one which challenged the sufficiency of evidence. N.T. p. 12 (January 20, 2010). "[A]ppellate counsel is not constitutionally obliged to raise any and all nonfrivolous claims; to the contrary, the Court has, on repeated occasions, emphasized that vigorous, effective appellate advocacy requires the exercise of reasonable selectivity in deciding upon which claims to pursue." Commonwealth v. Jones, 815 A.2d 598, 614 (Pa. 2002). Mr. Bartel further explained that an appeal based on sufficiency of the evidence would rely on the evidence presented by witnesses at trial, not objections,[] rulings, opening and closing statements, or jury instructions. N.T. p. 12 (January 20, 2010). All evidence presented by witnesses at trial was transcribed. See N.T. (January 8 and 9, 2007), generally. As a participant in the proceedings, it is not unreasonable to assume that Mr. Bartel had sufficient memory of the trial proceedings to decide which, if any, arguments were worth pursuing on appeal. This court agrees that appellate counsel's strategy was reasonable under the circumstances. As a result, Defendant's seventh claim must fail.

(Doc. 19-12, at 7-8).

When presented with the facts of this claim, the PCRA court concluded that Bibbs was not entitled to relief. The PCRA court determined that the claim lacked arguable merit and noted that trial counsel articulated a sound and reasonable basis for not seeking a full transcript. Specifically, trial counsel determined that the only viable claim for appeal was one which challenged the sufficiency of evidence.

In evaluating whether counsel's performance was deficient, the court "must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. Strickland, 466 U.S. at 689. The court finds that the record relied upon by the Superior Court supports a finding that trial counsel did preserve an appeal based on the only viable claim for review, and all the evidence pertaining to that claim was transcribed. Bibbs has not provided sufficient evidence to show that the representation by his

trial counsel fell below an objective standard of reasonableness. Additionally, Bibbs has not demonstrated that there was a reasonable probability that if his trial attorney had requested a full transcript of the trial, the result would have been different. Consequently, Bibbs' argument that trial counsel was ineffective for failing to transcribe opening and closing arguments, objections, rulings, and jury instructions is without merit. The habeas petition will be denied on this ground.

## V.     **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## VI.   <u>Conclusion</u>

For the reasons set forth above, the court will deny the petition for writ of

habeas corpus.  A separate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 28, 2018